278 So.2d 64 (1973)
STATE of Louisiana
v.
Wilbert FREZAL.
No. 52659.
Supreme Court of Louisiana.
May 7, 1973.
Rehearing Denied May 29, 1973.
*66 James David McNeill, Robert J. Zibilich, Jr., Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice:
Wilbert Frezal was indicted by the Grand Jury for the Parish of Orleans for the murder of Abbie Delk. He was tried by a jury and found guilty as charged. He reserved and perfected eleven bills of exceptions during the proceedings and thereafter appealed to this Court.
BILL OF EXCEPTIONS NO. 1
Bill of Exceptions No. 1 was reserved when the State denied defendant's application for the following particulars: the location, date and time of the arrest; when, where and under what circumstances the defendant was identified and by whom; and whether the State had any inculpatory or exculpatory statements or confessions which it intended to use in evidence. The State, in answer to the application for a bill of particulars, did furnish the age of the victim, the location and time of the crime, the fact that it was proceeding under Subsections 1 and 2 of Article 30 of the Criminal Code, and that there was no warrant of arrest.
*67 Under the provisions of Article 484 of the Code of Criminal Procedure, an accused may have the court require the district attorney to furnish a bill of particulars setting up more specifically the nature and cause of the charge against him. However, he is not entitled to the evidence relied upon by the State for its case. The State is not required to disclose the facts upon which it relies for conviction in advance of trial. State v. Bourg, 248 La. 844, 182 So.2d 510 (1966); State v. Square, 257 La. 743, 244 So.2d 200 (1971).
It is well settled law of this State that the accused in a criminal case is without right to pre-trial inspection of the evidence upon which the prosecution relies for conviction. State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). In State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945), it was decided that a defendant was entitled to a pre-trial inspection of his own written confession. State v. Hall, 253 La. 425, 218 So.2d 320 (1969) permitted a pre-trial inspection of a video-taped confession. State v. Migliore, 261 La. 722, 260 So.2d 682 (1972) permitted a pre-trial independent examination of certain drugs involved in that litigation under the guidelines to be set by the trial judge.
It is also settled jurisprudence of this State that in a trial for murder, the State need not be forced to elect and inform the accused whether it intends to prosecute under Subsections 1 or 2 of Article 30 of the Criminal Code because the crime of murder can be committed under any one of the two sets of circumstances or a combination of both and, therefore, the State can proceed under both Subsections 1 and 2 of Article 30 simultaneously. State v. Rowan, 233 La. 284, 96 So.2d 569 (1957); State v. McAllister, 244 La. 42, 150 So.2d 557 (1963).
For the foregoing reasons, we are satisfied that the State sufficiently supplied the particulars to inform the accused of the nature and cause of the charge against him, and, therefore, there is no merit to this bill.
BILL OF EXCEPTIONS NO. 2
This bill involves a prayer for oyer, in which the accused sought pre-trial inspection of: (1) all alleged oral confessions and/or statements of an inculpatory or exculpatory nature; (2) all alleged written confessions and/or statements and admissions of an inculpatory or exculpatory nature; (3) all alleged confessions and/or statements and admissions reduced to writing but not signed; (4) all quotations and/or paraphrases of alleged confessions and/or statements and admissions of an inculpatory or exculpatory nature made by the accused and reflected in the reports of the New Orleans Police Department and/or the files of the District Attorney; (5) a copy of all technical and laboratory reports and/or examination of all objects found or obtained at the scene of the offense of an inculpatory or exculpatory nature which may be used against the defendant by the State in this matter; (6) a description or copy of any objects which may have been removed from the scene of the alleged crime that may be of an inculpatory or exculpatory nature in regard to the defendant; (7) a copy of all pictures of the scene made by the New Orleans Police Department as they relate to the defendant in this case.
The State answered that it had neither written confessions nor confessions or statements reduced to writing but unsigned and that it was not required to furnish any of the other information sought. In regard to request for oral admissions, confessions and/or inculpatory statements, it is well settled that the State is not required to furnish this information prior to trial. State v. Hunter, 250 La. 295, 195 So.2d 273 (1967).
The request for copies of all technical and laboratory reports and/or examination or description of all objects found *68 or removed from the scene of the offense, and copies of all pictures made of the scene are all items which are not subject to pre-trial discovery. Defendant cannot use this procedure to obtain in advance of trial facts upon which the State relies for conviction. Defendant is entitled only to be informed in greater detail of the nature and cause of the charge against him through the procedural device of a bill of particulars.
For the above reasons, Bill of Exceptions No. 2 is without merit.
BILLS OF EXCEPTIONS NOS. 3 AND 11
Bill of Exceptions No. 3 was reserved to the overruling of defendant's motion to quash, and Bill of Exceptions No. 11 was taken to the denial of a motion in arrest of judgment.
The motion to quash re-urges his prayer for oyer. It further avers that Article 30, Subsection 2 of the Criminal Code, which embodies the felony-murder doctrine, is unconstitutional in that it allegedly imposes an intent where none actually exists; and it punishes by death under either Section, which is cruel and unusual punishment.
The motion in arrest likewise urges that R.S. 14:30 is unconstitutional in that it imposes a cruel and unusual punishment, death, and in requiring the forfeiture of life without proving specific intent. Additionally, it re-urges error in not requiring the State to elect under which Subsection of Article 30 it was proceeding.
The contention in the motion to quash in regard to the prayer for oyer has been disposed of under Bill of Exceptions No. 2.
The contention regarding the allegation that Subsection 2 of Article 30 imposes an intent where none actually exists is amply answered in the trial judge's per curiam, which is as follows:
"Defendant attacks the constitutionality of subparagraph (2) of R.S. 14:30, which defines the Louisiana `felony-murder' in that it allegedly `imposes an intent where none actually existed', `Punishes the defendant where there is no criminal intent,' and the statute calls for defendant's death under either subsection, which is cruel and inhuman punishment.
"R.S. 14:30 does not include the traditional common-law requirement of `malice aforethought, express or implied.'
"In sub-paragraph (2) of R.S. 14:30, Louisiana has adopted the common-law rule that a homicide committed in the course of a felony is murder. State v. McCollum (1914), 135 La. 432, 65 So. 600; State v. Werner (1919), 144 La. 380, 80 So. 596. But in response to the frequent criticism of the common-law felony-murder rule insofar as it has been applied in cases involving felonies not inherently dangerous to human life, the Louisiana law-makers have restricted felony-murder consequences to certain specified felonies, e. g. aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery or simple robbery.
"Contrary to defendant's contention, R.S. 14:30(2) does not `fictionalize' an intent, or supply one where none in fact existed. Whereas R.S. 14:30(1) requires `a specific intent to kill or to inflict great bodily harm,' R.S. 14:30(2) does not require an `intent to kill,' but does require that the defendant be engaged in the perpetration or attempted perpetration of the six enumerated felonies in order that the conduct constitute murder.
"The requirement of R.S. 14:30(2) that the `offender' be `engaged in the perpetration or attempted perpetration' of the enumerated felonies, while it removes from the State the burden of proving `specific intent to kill or to inflict great bodily harm,' does require the State instead to prove beyond a reasonable doubt that defendant was committing or attempting to commit one of the enumerated *69 felonies, and that in the course of such conduct, the defendant killed somebody. The state is bound by the same burden of proof in felony-murder as to proving the underlying felonious conduct by the defendant as it would be if it were seeking his conviction for the felony itself instead of for murder. This burden of proof requires the State to prove the criminal intent, be it general or specific, requisite to convict defendant of such felony. Thus, R.S. 14:30(2), despite defendant's allegations in his Motion to Quash, does not impose an intent where none actually existed."
The claim made in these motions that the penalty of death is cruel and unusual punishment will be hereinafter disposed of under Bill of Exceptions No. 5. The remaining contention that the State should have been required to elect has been previously answered.
Bills of Exceptions Nos. 3 and 11 are without merit, except insofar as they apply to the imposition of the death penalty.
BILL OF EXCEPTIONS NO. 4
Bill of Exceptions No. 4 was reserved to the denial of motions for continuance and for permission to withdraw as court-appointed counsel.
This bill was taken under the following circumstances. After selection and impanelling of the jury, the jury was excused for a brief recess. When the recess was ended, defense counsel informed the court that the defendant wished to personally address some remarks to the court. Thereupon, the defendant addressed the court and remarked that he was not "happy" with the assistance of his court-appointed counsel for the reason that, in his opinion, said counsel was not rendering him adequate assistance.
At this point, defense counsel orally moved for a continuance of the trial and also moved for permission to withdraw as counsel.
These motions were denied.
The trial judge states in his per curiam that he found no fault, neglect or lack of skill on the part of Mr. Koch or Mr. McNeill, and no other counsel had sought to make an appearance on defendant's behalf. In the light of the facts presented, the trial judge found defendant's motions to be frivolous and merely interposed for delay.
In State v. Austin, 258 La. 273, 246 So. 2d 12 (1971) this Court approved denial of identical motions under similar circumstances. It was there held that it was not error to deny the accused's request to discharge his court-appointed counsel on the day of trial, without any showing of incompetence and without having a privately retained attorney present to take his place. We also held that there was no error in denying the motion for a continuance, made on the day of trial, on the ground that defendant was dissatisfied with court-appointed counsel where defendant and his attorney were present in court and the attorney was prepared to try the case.
After reviewing the trial judge's per curiam to this bill and the testimony in connection therewith, we do not find that there was any abuse of discretion in denying these motions.
BILL OF EXCEPTIONS NO. 5
This bill was reserved to the overruling of defendant's objection to the District Attorney asking prospective jurors if they could render a verdict of guilty as charged which would require a capital verdict.
This bill is moot since the sole issue it presents is whether Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) was violated in the selection of the petit jury which tried this case. The Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), held that the death penalty under statutes similar to *70 Louisiana's constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Thus, the death sentence imposed on Frezal cannot be carried out, and this case will be remanded to the trial court so that the accused can be sentenced to life imprisonment. See State v. Refuge, 264 La. 135, 270 So.2d 842 (1972); State v. Preece, 264 La. 156, 270 So.2d 850 (1972).
BILL OF EXCEPTIONS NO. 6
In this bill, the defense objected to the following language used by the District Attorney in his opening statement to the jury: "Of one thing we can be certain. A struggle in which blood became splattered on the walls...." The claim was made that this language is argumentative and inflammatory. When the objection was overruled by the trial judge, defense counsel moved for a mistrial which was denied.
According to Article 766 of the Code of Criminal Procedure: "The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." Although the language to which the defendant directed his objection, "Of one thing we can be certain," is more in the nature of argument; it does not fall within the scope of Article 770 of the Code of Criminal Procedure requiring a mistrial, nor was it so prejudicial to defendant as to require admonition under Article 771 of the Code of Criminal Procedure. Furthermore, it served to set forth the nature of the evidence by which the State expected to prove the charge of murder both under R.S. 14:30(1) and (2). We find no prejudice to defendant from this statement.
Accordingly, this bill has no merit.
BILL OF EXCEPTIONS NO. 7
This bill was reserved to the overruling of the objection by the defendant and the denial of his motion for a mistrial to the remarks made by the District Attorney in his opening statement and the testimony which was introduced pursuant thereto. The remarks were as follows: "The State will further offer testimony of system and intent and guilty knowledge on the part of Wilbert Frezal by the testimony of one Dorothy Duplantier."
The testimony of Dorothy Duplantier was that on May 21, 1963, Frezal entered her residence at about 2:25 in the afternoon, stabbed, beat her, and tried to rape her. The objection was made that the defendant is charged with murder and not rape; therefore, admission of evidence regarding the latter crime was of such dissimilar nature so as to be grounds for a mistrial. In his per curiam to this bill, the trial judge states that defendant was charged herein with the murder of Abbie Delk. The State's evidence showed that she was killed by the defendant in the course of his attempting to commit aggravated rape. He further states that it was necessary to show the requisite intent on the part of defendant to commit murder and/or attempted aggravated rape; and in furtherance thereof, the State called as a witness one Dorothy Duplantier, who testified that the defendant had attempted to rape her, and did, in fact, stab her approximately four years before the occurrence of the offense charged herein. It was the ruling of the trial judge that such evidence was admissible under R.S. 15:445 and 15:446.
Appellant contends that the record in the instant case contains no evidence of sexual penetration; that the charge in the instant case is murder; and that the State should not have been allowed to put in evidence of attempted rape of Mrs. Dorothy Duplantier, as this was a different offense. State v. Gray, 262 La. 53, 262 So.2d 367 (1972) is cited as authority for this argument.
The above contention is without merit. In Gray, supra, the accused was charged *71 and convicted of attempted murder. Therefore, it was necessary to prove the intent to commit the crime of murder. We held that evidence of similar acts would be admissible to prove intent under R.S. 15:445. However, in Gray, there was not even a suggestion of forcible rape connected with the offense charged. Accordingly, we held that evidence of a rape of another person could not be considered similar to the offense of attempted murder, and it was error to have elicited such testimony. In the present case, on the other hand, Frezal is charged under Article 30 of the Criminal Code, which defines murder as the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of, among other things, aggravated rape, even though he has no intent to kill. Further, in the answer to the bill of particulars in the instant case, the State informed the accused that the prosecution was based on both Subsections 1 and 2 of Article 30. Also, in the prosecutor's opening statement to the jury, he explained that the prosecution was based not only on the theory of specific intent to kill or do great bodily harm, but also on the felony-murder doctrine in that the murder occurred during the perpetration or attempted perpetration of, among other crimes, aggravated rape.
It should be pointed out that the felony-murder doctrine also includes the attempted perpetration of the enumerated felonies. We observe that Article 27 of the Criminal Code, defining "Attempt" provides:
"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. * * *"
State v. Evans, 249 La. 861, 192 So.2d 103 (1966) is dispositive of the question presented. In Evans, the accused was charged with murder under both Sections of Article 30, the killing have taken place during an attempted armed robbery. During the trial, the State called to the stand various witnesses who testified to a prior armed robbery and also to several attempted armed robberies by the accused. In affirming the conviction, this Court said that, inasmuch as the charge of murder was made under the felony-murder doctrine, it was not necessary to prove intent as to the homicide. However, it was required of the State to establish the armed robbery intent, particularly since the instant attempted armed robbery had not actually been consummated but was frustrated by the operator's refusal to hand over the money. It was incumbent on the State to show, in other words, that the killing occurred while the defendants were attempting armed robbery. Therefore, evidence of other crimes referred to, their having been similar in nature, indicative of a pattern, and reasonably close in point of time to the crime charged, were admissible to disclose such intent.
In the instant proceeding, the charge of murder was likewise made under both the felony-murder doctrine as well as Subsection 1 of Article 30. Therefore, it was appropriate herein for the prosecution to establish the intent to commit the crime of aggravated rape since the rape had not been consummated. In other words, it was necessary for the State to show that the killing occurred while the accused was engaged in the attempted perpetration of aggravated rape. The record clearly indicates that aggravated rape was intended. The evidence of a terrific struggle put up by the murdered woman, her resistance to the utmost point unmistakably to attempted rape. Moreover, the zipper of her pants was open when her bleeding body was found. Her blouse had been torn open; the bed was ruffled and blood-spattered; a piece of cloth was found around her neck; and an electric cord was wrapped around one of her arms. Also, exhibits show the *72 partially nude body as it was found at the scene of the crime.
Since it was necessary to prove intent to commit attempted aggravated rape, evidence of similar acts was admissible under R.S. 15:445 and 15:446. There can be little doubt that Dorothy Duplantier's testimony concerning the attack on her by Frezal in May of 1963 was evidence of a "similar act" within the meaning of the cited authorities. The modus operandi of the two crimes is identical. In both instances, Frezal entered the residences during the early afternoon while the victims were alone. On each occasion, he threw a piece of cloth around the victim's neck or head, and when the woman resisted him, he viciously stabbed her time and time again in the upper part of the body and hit her on the face and head. Frezal could have been charged with attempted murder of Mrs. Dorothy Duplantier as well as attempted rape, as details of that offense clearly show. The only difference in the two crimes is that Dorothy Duplantier did not die of her wounds and, thus, was able to later identify her attacker.
The fact that the former similar act (the attack on Mrs. Duplantier) occurred four years before the instant crime is a matter which addresses itself to the weight of the evidence rather than to its admissibility. State v. Cupit, 189 La. 509, 179 So. 837 (1938). In Cupit, the accused was convicted of assaulting his niece with intent to commit rape. During the trial, a State witness, another niece of the accused, testified that her uncle had raped her, the witness, eight years before the crime charged. The judgment was affirmed by this Court.
Recently, in State v. Bolden, 257 La. 60, 241 So.2d 490 (1970), this Court reaffirmed its holding in Cupit by indicating that under R.S. 15:445, evidence of similar acts independent of the act charged as a crime in the indictment is admissible to show intent. The fact that the previous offense occurred two years prior to the offense charged is a matter which addresses itself to the weight of the evidence and not to its admissibility, citing State v. Cupit, supra.
The attack on Dorothy Duplantier four years before (to which offense Frezal pleaded guilty) and the present crime are so similar that the evidence of the prior offense clearly serves to illustrate the question of Frezal's intent as to the attempted perpetration of aggravated rape in the instant case.
The records of the Criminal District Court for the Parish of Orleans show that Wilbert Frezal was discharged from Angola on December 1, 1966, where he had been serving his sentence in the Dorothy Duplantier case. Thus, at the time Frezal murdered Abbie Delk, the victim in the present case (March 14, 1967), he had only been out of the penitentiary for three and one-half months. Accordingly, this factor should certainly be taken into consideration in considering the proximity of the time sequence of these offenses.
For the foregoing reasons, this bill is without merit.
BILL OF EXCEPTIONS NO. 8
This bill was reserved to the ruling of the trial court allowing the admission into evidence of photographs of the body of Abbie Delk, the murder victim, as she was found in her home in the state of partial nudity and with various stab wounds on her.
The objection to their introduction was that they had no probative value whatsoever and were only used to inflame the jury and cloud their minds as to any further evidence introduced.
The per curiam of the trial judge sets forth that these pictures were offered "for the purpose of demonstrating `specific intent to kill or inflict great bodily harm' by the position and type of wounds, `perpetration or attempted perpetration' of aggravated *73 rape by the condition of the victim's garments, and so forth."
This Court observed in State v. Hall, 256 La. 336, 236 So.2d 489 (1970):
"* * * Undoubtedly the photographs served to prove details and clarify questions in the minds of the jury which the testimony alone could not do.
"The fact that objects or photographs constitute or portray a repulsive spectacle and tend to prejudice the jury furnish no valid grounds for their exclusion where they are otherwise relevant. State v. Hamilton, 249 La. 392, 187 So. 2d 417 (1966)."
The test, as considered in State v. Washington, 256 La. 233, 236 So.2d 23 (1970), is whether: "* * * the probative value of the photographs outweighs their probable prejudicial effect." State v. Maiden, 258 La. 417, 246 So.2d 810 (1971); State v. Ford, 259 La. 1037, 254 So.2d 457 (1971).
In the instant case, the photographs of the victim showing the stab wounds were offered to show the specific intent to kill or inflict great bodily harm. The condition of the victim's garments as shown in these photographs, i. e., her clothing in a disorderly state; the blouse partially open and torn; the zipper open in the slacks; and the bed ruffled and blood-splattered, was in furtherance of the State's position that the crime was committed during the perpetration or attempted perpetration of aggravated rape.
We find no error in the ruling of the trial court on this bill.
BILL OF EXCEPTIONS NO. 9
Bill of Exceptions No. 9 was taken to the refusal of the trial judge to give a special charge on irresistible impulse. It was the position of the judge that the general charge was sufficient in the field of insanity and that the special charge requested was not wholly and completely correct and pertinent.
Defendant argues that the charge given by the court in the field of insanity is antiquated, and the refusal to give the special charge requested was a denial of defendant's constitutional rights. The requested special charge is as follows:
"Gentlemen: If you should find after careful examination of all of the evidence and of the testimony adduced herein that the defendant was suffering from some abberation of the mind to form such a psychotic state of the mind that whatever acts he committed at the time of the crime were due to an uncontrollable compulsion of such intensity that he could not resist from doing what he did do then I charge you that IT WOULD BE YOUR DUTY AS JURORS AND under your oath as jurors to find the defendant NOT GUILTY by reason of insanity even though you are convinced beyond a reasonable doubt that he is in fact guilty of the crime charged herein."
The applicable provision of our law as found in R.S. 14:14 has its origin in the rule or test established in England. McNaughton's Case, 1 Car. & K. 130 (1843). It is referred to as the "right or wrong" test. State v. Tapie, 173 La. 780, 138 So. 665 (1931).
The same argument presented in this bill was made in the case of State v. Bickham, 239 La. 1094, 121 So.2d 207 (1960). This Court clearly stated that Louisiana applies the "right and wrong" test in such cases. Previously, in disposing of a similar contention in State v. Jenkins, 236 La. 256, 107 So.2d 632 (1958), this Court observed that the contention that the law of Louisiana is outmoded and archaic and should be changed in accordance with the test of legal insanity prevailing in some other jurisdictions is beyond the scope of the appeal and presents a matter that should be addressed to the legislature.
*74 Again, when this Court was presented with the identical question, it reaffirmed its holding in the Bickham and Jenkins cases. we stated in State v. Plaisance, 252 La. 212, 210 So.2d 323 (1968), cert. den. 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 470:
"* * *
"The trial judge under the express provisions of the Code of Criminal Procedure must charge the jury with the applicable law of the case [footnote of authorities eliminated] i.e., `If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.' R.S. 14:14. Counsel for defendant's contention that this law is outmoded and archaic and should be changed to the test of legal sanity prevailing in other jurisdictions referred to as the Durham Rule or that of irresistible impulse, is a matter that addresses itself to the legislature. State v. Jenkins, 236 La. 256, 107 So.2d 632; State v. Bickham, 239 La. 1094, 121 So.2d 207."
Article 802(1) of the Code of Criminal Procedure provides that the court shall charge the jury as to the law applicable to the case.
Accordingly, the trial court properly refused the special charge of "irresistible impulse" under the law and jurisprudence of this State.
BILL OF EXCEPTIONS NO. 10
This bill was reserved to the overruling of defendant's motion for a new trial.
The defendant urges the following grounds as a basis for granting this motion: the conviction is contrary to the law and the evidence; the bills reserved during trial show prejudicial error; the ends of justice would be best served by granting a new trial; the conviction is based upon circumstantial evidence; the state's evidence consists of proving guilt by system and intent, that is, by the use of a prior conviction for attempted aggravated rape; the defendant was not allowed to discharge his court-appointed counsel; and defendant absented himself temporarily during the proceedings.
The contention that the conviction is contrary to the law and evidence presents no question of law for our review. State v. Grey, 257 La. 1070, 245 So.2d 178 (1971).
All of the remaining contentions, save one, have been discussed and disposed of previously. This contention is that defendant absented himself temporarily from the courtroom. This occurred shortly before the testimony of Dorothy Duplantier and after the accused made several outbursts directed at her, as well as at his counsel and the court. The bill taken recites that the defendant absented himself of his own volition at this time.
The per curiam to this bill correctly disposes of this issue:
"As to defendant's claim that he be granted a new trial due to his voluntary absence from the courtroom during Mrs. Duplantier's testimony, the record shows that defendant was present when the State called Mrs. Duplantier, and that defendant insisted that he be permitted to leave the courtroom while she testified, and that in connection with his request he was extremely abusive of counsel, the Court, and the witness, threatening the order of the Court. Thus the Court acquiesced in defendant's wish to voluntarily absent himself during Mrs. Duplantier's testimony, inasmuch as defendant had, by his boisterous conduct, forfeited his right to be present at the trial. See Illinois v. Allen (1970), 397 U.S. 337. [90 S.Ct. 1057, 25 L.Ed.2d 353] Defendant is not entitled to a new trial on these grounds."
*75 One of the most basic rights guaranteed by the Confrontation Clause is that the accused has a right to be present in the courtroom at every stage of his trial. Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). However, it was held in Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) that a defendant's Sixth Amendment right to be present at his own trial was not so "absolute" that he could not lose it. In the Allen case, the United States Supreme Court stated that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom.
In the instant case, the defendant insisted that he be permitted to leave the courtroom. Additionally, he was disorderly, disruptive and disrespectful in the manner in which he made the request to be absent from the courtroom. The trial judge properly granted his request, and, in view of the particular circumstances, no legal error was committed.
Bill of Exceptions No. 10 is without merit.
For the reasons assigned, the conviction of the defendant is affirmed; the death sentence imposed upon him is annulled and set aside; and the case is remanded to the Criminal District Court, Parish of Orleans, Section "H", with instructions to the trial judge to sentence the defendant to life imprisonment.
BARHAM, J., dissents with reasons.
TATE, J., concurs and assigns written reasons.
DIXON, J., dissents.
CALOGERO, J., concurs and assigns written reasons.
BARHAM, Justice (dissenting).
The majority has found that since the defendant was charged with murder under Subsections 1 and 2 of the murder statute, R.S. 14:30, specific intent to commit a felony under Subsection 2 was a necessary ingredient of the crime so as to permit evidence of similar acts to be introduced under R.S. 15:445 and 15:446. The majority states: "* * * In other words, it was necessary for the State to show that the killing occurred while the accused was engaged in the attempted perpetration of aggravated rape. The record clearly indicates that aggravated rape was intended. The evidence of a terrific struggle put up by the murdered woman, her resistance to the utmost point unmistakably to attempted rape. Moreover, the zipper of her pants was open when her bleeding body was found. Her blouse had been torn open; the bed was ruffled and blood-spattered; a piece of cloth was found around her neck; and an electric cord was wrapped around one of her arms. Also, exhibits show the partially nude body as it was found at the scene of the crime." (Emphasis here and elsewhere has been supplied.)
After stating as well as showing so emphatically that the State had already established that the murderer intended to commit aggravated rape, the majority then holds: "Since it was necessary to prove intent to commit aggravated rape, evidence of similar acts was admissible under R.S. 15:445 and 15:446. * * *"
The admission of evidence of other offenses merely to pile up prejudice against and ill feeling toward a defendant rather than actually to establish a point still at issue (here, intent) was the thrust of much of the criticism by this court in State v. Prieur, La., 277 So.2d 126, No. 52365 on our docket, decided February 19, 1973. Here the majority allows the State to use evidence of an attempted rape committed by this defendant four years before this murder to prove what the State has already established, and that is the "intent". The majority has compounded error by allowing evidence of other crimes to prove *76 that the defendant is a "bad man", is licentiously disposed, is as a matter of fact guilty of the crime charged because he was convicted of another crime four years before.
I respectfully dissent.
DIXON, Justice (dissenting).
I respectfully dissent.
Evidence of the four-year-old rape is irrelevant. The defense was insanity. Evidence of the prior offense merely went to show that the defendant had once before committed a terrible crime. Although there was similarity in the offenses, there was no issue in the case as to knowledge, intent, system, identity, or any other issue to which the prior offense was relevant.
TATE, Justice (concurring).
With great reservations, the writer concurs in the use of evidence of the 1963 rape to prove felony-intent as a basis for conviction of the 1967 murder. (See Bill of Exceptions No. 7.)
My decision might well be to the contrary, had this case been tried after our decision in State v. Prieur, La., 277 So.2d 126 (Docket No. 52,365, decided February 19, 1973), with that decision's clarification of and limitation upon the use of other crimes to prove guilt of the crime with which charged. I further realize that, to a certain extent, the present decision is in conflict with that in State v. Moore, La., 277 So.2d 141, because the prejudicial effect of the proof of the prior crime may far outweigh its probative effect. The Moore decision likewise clarifies the use of other crimes and attempts to limit such use in accordance with the statutory intent.
In the future, I am sure, prosecutors will be wary about utilizing evidence of this nature, really unnecessary for proof of guilt of the crime with which charged. If, for instance, the proof of guilt of the present crime were less great than in the present case, I am inclined to believe that its admission here could amount to reversible error, since the proof of the other crime is of relatively slight probative value and is, of course, greatly prejudicial.[1]
However, I concur in the present affirmance, based upon pre-Prieur interpretations, for the following reasons:
(1) Since the victim of the present crime was not actually raped, arguably the prior rape (of identical modus operandi) is admissible to prove that the defendant killed the present victim while engaged in the attempted perpetration of aggravated rape, La.R.S. 14:30(2), as charged. (If the rape of the present victim had been proved, then the prior rape would not have been admissible; there then would be no issue as to whether the murder had occurred during the commission of a felony.)
(2) Even so, the prior rape might have not been admissible except that, under the present circumstances, the modus operandi in the commission of the prior and the present crimes is identical.
(3) Ordinarily, the four-year time lag between the other offense and the charged offense would have barred the use of the earlier offense in the present trial. However, under the exceptional circumstances where for almost all of the four years the defendant had been imprisoned by reason of conviction of the earlier offense and, almost immediately upon his release, committed the second offense, the time lag is actually only about three months.
*77 (4) Furthermore, while perhaps not of overriding legal importance, I have less reservations to the use of the prior crime where in fact the defendant had been convicted of it and had served time for it. There is no legal doubt of his guilt of the earlier crime.
In most of the previous instances before us, the defendant had not been convicted of either the "other" or the charged crime. In effect, he was forced to defend his innocence of two or more crimes, when supposedly he was only on trial for the one with which charged. See the dissent of Chief Justice Fournet in State v. Ferrand, 210 La. 394, 27 So.2d 174, 178 (1946) and the dissent of Justice Barham in State v. Crook, 253 La. 961, 221 So.2d 473, 477 (1969).
The Code of Criminal Procedure prohibits the trial of a defendant without his consent on more than one offense at the same time, in view of the prejudice to which a defendant is thereby subjected. See La.C.Cr.P. Art. 493 and Official Revision Comment. It seems to me that this philosophy of our Code is flouted if a defendant is forced to defend himself against evidence of two or more offenses in a single trialthere may be insufficient proof of the guilt as to either, but the prejudicial testimony as to the two crimes is cumulative evidence that the defendant is a bad man who ought to be convicted of something. This objection to the use of other crimes to prove guilt of an offense with which charged does not apply under the present circumstances.
For these reasons and with these reservations, I concur in the majority opinion.
CALOGERO, Justice (concurring):
While I adhere to the principles we set forth in State v. Prieur, La., 277 So.2d 126, No. 53,365 on our docket, decided February 19, 1973, I, nevertheless conclude that in the instant case, the admission of the evidence of the prior attempted rape and the evidence that defendant had pleaded guilty to same was not reversible error.
The defendant was charged with the crime of murder under subsections 1 and 2 of La.R.S. 14:30. La.R.S. 14:30(2) provides in pertinent part:
"Murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of... aggravated rape, ... even though he has no intent to kill."
In the presentation of its case in chief the State has the burden to prove beyond a reasonable doubt the existence of every essential element of the crime charged. In the instant case the State proceeded, among other premises, on the theory that the victim was killed during the attempted perpetration[1] of aggravated rape. Thus, the element of the intent of the perpetrator was essential to the inquiry as to whether the person charged with the crime (the defendant) was guilty of murder. Evidence tending to show that the victim was killed incident to defendant's attempt to commit rape upon her was therefore relevant.
The fact that the State had introduced evidence from which an inference could have been drawn that the perpetrator of the crime here had an intent to commit aggravated rape should not, alone, preclude the State from introducing further evidence as to this intent. Thus, merely because it was shown that the victim's pants zipper was open and that her clothes were ripped apart should not prevent the State from introducing other evidence to prove that the perpetrator intended to commit aggravated rape.
The other evidence to which I refer above is the testimony establishing that the *78 defendant had previously attempted to commit an aggravated rape of another woman in a manner extremely similar to the circumstances surrounding the crime for which the defendant is now charged. This evidence is admissible for the reason that it is relevant to prove that the defendant's conduct in beating and stabbing the victim in the instant case was likely incident to an attempt to commit aggravated rape. The fact that the defendant had on a previous occasion engaged in a similar course of conduct (in which, incidentally, the victim survived and was able to testify that the defendant had attempted to rape her) is not evidence which is admissible to prove that the defendant had a propensity to commit murder, nor a propensity to commit rape, but rather to prove that his intention at the time of the perpetration of the crime charged was to commit an aggravated rape, thereby satisfying that element of the "felony murder" statute. La. R.S. 14:30(2).
For the reasons herein expressed I concur in the majority opinion.
NOTES
[1] For example, if the defendant had been guilty of a 1963 rape and was charged with the present offense on mere suspicion or merely because he lived in the same neighborhood as did the victim, then the circumstance that he had committed an earlier rape could of itself, without corroborating evidence sustain a jury verdict of his guilt of the present rape-murder even if he was completely innocent of it and at home asleep in bed when it occurred. This would be contrary to our entire theory of the burden of the state to prove a defendant guilty beyond a reasonable doubt.
[1] There was no evidence that a completed act of aggravated rape had occurred.