807 So.2d 967 (2002)
STATE of Louisiana
v.
Joseph A. PERALTA.
No. 01-KA-149.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
*968 Paul D. Connick, Jr., District Attorney, Thomas J. ButlerCounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Douglas W. FreeseTrial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee, State of Louisiana.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Attorney for Appellant, Joseph A. Peralta.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, Joseph A. Peralta, appeals from his seven convictions of armed robbery, his two convictions of aggravated battery and his sentences to 50 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence on each armed robbery, to run consecutively, and 10 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence on each aggravated battery, to run consecutively.[1] For the reasons which follow, we affirm the convictions, vacate the sentences, and remand for resentencing.
The Jefferson Parish District Attorney filed a bill of information charging Defendant with 11 counts of armed robbery, in violation of La. R.S. 14:64, and three counts of aggravated battery, in violation of La. R.S. 14:34. Defendant pled not guilty to all charges at arraignment. After a hearing, the trial judge denied Defendant's motion to suppress his identification.
On the day of trial, the State nolle prosequied three of the armed robberies, (counts two, eight and nine).[2] Defendant then proceeded to trial on seven counts of armed robbery (one count remained) and two of the three counts of aggravated battery (one count remained).
Several armed robberies occurred in Jefferson Parish between September 20, 1999 and October 20, 1999. Detective William Jones of the Jefferson Parish Sheriffs Office testified at trial that the Defendant became a suspect in these after Big Daddy's lounge in the French Quarter in New *969 Orleans was robbed on November 28, 1999. Still photographs from Big Daddy's video surveillance system were circulated to the public and the Defendant was identified from these photographs. The victims viewed a photographic lineup containing the Defendant's photograph and five others and the Defendant was arrested after being positively identified as the perpetrator of these offenses, in order of occurrence:

COUNT TWO
Count two alleged that Defendant committed armed robbery of Samantha Tiesel (Tiesel). On September 20, 1999, 23 year old Tiesel was a bartender at Zatty's Tavern on Jefferson Highway. Before her shift began at 2:00 a.m., a man walked into the bar and asked for the location of the restroom. Tiesel pointed in the direction of the restroom. When the man returned from the restroom, he was holding a gun, said he was robbing the bar, and ordered everyone to lie on the floor. Everybody in the bar complied, except one intoxicated patron who lunged at the robber, and the robber pistol-whipped the patron. Thereafter, Tiesel gave the robber the money from the cash register and the man demanded money from the drawer also. After she gave him approximately $835, the man ordered her to show him the telephone, which he then ripped from the wall, and he left the bar. Tiesel positively identified the Defendant as the robber from a photographic lineup, and also at trial.

COUNTS ONE AND EIGHT
Count one alleged that the Defendant committed armed robbery of Michelle Vicknair (Vicknair). Count eight alleged that the Defendant committed aggravated battery upon Nicholas Revon (Revon). On October 3, 1999, Vicknair was working as a bartender at Coach's Corner, a bar in Metairie. At approximately 11:30 p.m., a man entered the bar and asked for the restroom. When he exited the restroom a few minutes later, the man was holding a gun and said, "This is a stickup." He ordered everyone to lie on the floor, but the owner of the bar, seventy-year-old Revon, did not move quickly enough for the man. Revon looked at the man, who emphatically repeated his command to lie on the floor. As Revon was in the process of getting out of his chair, the man hit Revon in the face with the gun and threw the chair on top of Revon as he collapsed to the floor. Revon said that when he saw the blood "shooting" from his head into his hands, he thought he might never see his family again. Ultimately, Revon's injury required sixteen stitches.
After Vicknair saw the robber "brutalize" Revon, the robber pointed the gun at her. In fear for her life, Vicknair began "throwing" the money from the register onto the bar. The man ran out of the bar with approximately $3500. Alan Brown (Brown), who was in the bar that night, followed the man out and saw him leap into the passenger's side of a truck, which sped away. Vicknair, Revon, and Brown all positively identified the Defendant from a photographic line-up, and also at trial.[3]

COUNTS FIVE, SIX AND SEVEN
Counts five, six and seven alleged that the Defendant committed armed robbery of Sherrie Colton (Colton), Troy Boykin (Boykin), and Michael Lemoine (Lemoine), respectively. On October 17, 1999, Colton was the bartender at Boom `N Sports bar in Metairie. At approximately 1:12 a.m. a man entered the bar and asked the location *970 of the restroom. The man went into the restroom and came out holding a gun. He ordered everyone to lie on the floor and directed Colton to obtain the money from the register. Colton gave him all of the money in denominations of fives, tens, and twenties. Apparently not satisfied, the robber took the ones and the quarters from the register drawer and disconnected the telephone before leaving.
Colton said that the man also took the wallets of Boykin, who entered the bar during the robbery, as well as Lemoine, and Bruce Applegarth, who were inside the bar at the beginning of the robbery.[4] Neither Boykin nor Lemoine were able to make positive identifications from photographic lineups or at trial. However, Colton said that she recognized the Defendant as the robber from a photographic lineup and she also saw him in the courtroom earlier that day. She said that she was positive because she looked into his eyes as he put the gun to her forehead. Colton was not sure of the exact amount of money which the robber took, but she said that he took "every single penny in that bar."

COUNTS THREE, FOUR, AND NINE
Counts three and four alleged that the Defendant committed the armed robbery of Norma Lively (Lively) and Randolphe Burge (Burge), respectively. Count nine alleged that the Defendant committed aggravated battery of Burge. On October 20, 1999, a man entered Cajun Catfish, a restaurant at 521 Central Avenue in Jefferson. At approximately 9:30 p.m., the man purchased a beer, drank it, and then left. He returned a while later, purchased another beer and went to the restroom. When the man returned from the restroom, Fred Andrews (Andrews), an employee of Cajun Catfish, saw that he had a gun. Lively, the owner of Cajun Catfish, said that she heard some "obscenity" after the man returned from the restroom. As she looked in the direction of the noise, the man was hitting Burge, a patron in the restaurant that night. Lively was very afraid because of the "blood running all over" Burge.
She then noticed the man was "waving" a gun in the air, and Lively told the man to take whatever he wanted and gave him a bag containing the restaurant's money that was kept under the cash register. The man also ordered Lively to open the register. She had difficulty opening the register, since it was not frequently used. With the assistance of Andrews, the register was finally opened, but was empty. The man was nervously pacing back and forth, muttering that he was "forgetting something." Then he yanked the telephone from the wall. Lively stated that the man took approximately $850.
Burge had very little recollection of the events leading up to the robbery. He had just purchased a beer with a $20 bill and left the change immediately in front of him on the bar. Burge testified that he was talking to another customer at the bar and noticed that a person looking over his shoulder. The next thing he remembered was waking up with a rag over his head. Burge said that he sustained a fractured jaw, injuries to his ear, and eleven stitches.
Neither Lively nor Burge was able to make a positive identification of the robber. Lively said that she was afraid to look at the robber and Burge said he was not paying attention to the robber's face. However, Andrews positively identified the Defendant as the robber from a photographic lineup and again at trial in open court. Andrews emphasized on cross-examination *971 that he was certain of his identification because the man "had a gun in his face." Following trial, a twelve-person jury found Defendant guilty as charged on these counts.
On June 20, 2000, the trial judge then sentenced the Defendant to 50 years of imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence on each of the seven counts of armed robbery, to be served consecutively with each other. Also, the trial judge sentenced the Defendant to serve 10 years of imprisonment at hard labor on each of the two counts of aggravated battery, to be served consecutively with each other.
The State subsequently filed a habitual offender bill of information alleging defendant to be a fourth felony offender based on prior convictions of simple robbery, attempted armed robbery, and possession of contraband in a penal institution. A habitual offender hearing commenced on November 21, 2000, but the State dismissed it on July 17, 2001. It is from these convictions and sentences that the Defendant appeals. On appeal, the Defendant assigns two errors.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error the Defendant argues that the trial court erred in ordering him removed from the courtroom during parts of the trial. More particularly, the Defendant complains that his constitutional right to confront witnesses against him was abridged because the trial judge improperly removed him from the courtroom during trial. According to the Defendant, his actions did not constitute the sort of disruptive behavior to justify his removal during trial.
The State responds that the Defendant waived his right to be present at trial by his disruptive behavior, as well as by his numerous requests to be removed from court.
The record reflects that the Defendant was removed from court for "lots of outburst" before jury selection. The transcript begins with a notation from the court reporter that the Defendant addressed the defense attorney in a "boisterous, obviously agitated, manner." The following discussions then occurred:
MS. GUSTE [defense attorney]:
Don't say anything right now. The jury is coming in. Don't say anything.
MR. PERALTA:
I have some questions for you, Your Honor.
THE COURT:
Okay. You have to be quiet right now.
MR. PERALTA:
Yes, sir.
THE COURT:
Okay. State ready to proceed?
MR. FREESE [assistant district attorney]:
State is ready for trial, Your Honor.
THE COURT:
Defense is ready?
MS. GUSTE:
Defense is ready.
MR. PERALTA:
No, sir, Your Honor. Defense is not ready.
THE COURT:
Mr. Peralta, I'm going to warn you one more time. Don't talk.
MR. PERALTA:
I don't really care about that, Your Honor. Defense is not ready today. Excuse me, Your Honor, when I went to arraignment I pled not guilty by reason of insanity. That hasn't been addressed. I've been asking my lawyer for the last three months for
MS. GUSTE:
Your Honor, I'd like

*972 THE COURT:
Mr. Peralta
MR. PERALTA:
the dates and times of these robberies.
THE COURT:
Mr. Peralta, one more time. Don't talk unless I ask you a question or something happens in Court that requires you to speak. That's the last time I'm warning you now. Don't talk. Just sit down.
MR. PERALTA:
Man, I'm not sitting down.
THE COURT:
Okay.
MR. PERALTA:
I'm not sitting down.
THE COURT:
Either bind him or shackle him, or take him out of the courtroom.
MR. PERALTA:
That's right. Take me up right out of there. Come on. Come on. I'm not staying here. I'm not staying in the Court.
MS. GUSTE:
Your Honor, for the record, I'd like it to be noted that I advised Mr. Peralta of the charges against him, indicating the dates and times, and I have requested some instanter subpoenas issued on his behalf.
MR. PERALTA:
Man, y'all going to take me up out of here. That's bullshit, man. No, what y'all going to do? You mean, y'all going to hold me here the whole time? Excuse me, your Honor
THE COURT:
Okay, Deputies, take him back to the prison.
After discussion between the attorneys and the trial judge, the court made the following statement:
THE COURT:
Okay. Under the provisions of Article 832 of the Code of Criminal Procedure, the Court was convinced that the defendant was going to continue to disregard the Court's instructions, to remain silent, except at those times when during the trial it became his right to speak, such as if he decided he wanted to take the stand or something of that nature. He continuously refused to obey the Court's orders. And therefore, under that statute the Court had him removed.
What I intend to do is periodically during the course of the trial, send a deputy to see if he wants to come back and if he can behave himself. If he refuses or continues to do that, he'll stay out.
The trial court then inquired as to whether the Defendant had ever pled not guilty and not guilty by reason of insanity, and defense counsel assured the trial court that the record reflected Defendant pled only not guilty. The record reflects that the Defendant remained at the Jefferson Parish Correctional Center during jury selection and until after the State's opening statement. At that point, the trial judge was informed that the Defendant wished to explain his previous behavior. When the Defendant was returned to the courtroom, the trial judge addressed the Defendant (out of the presence of the jury) as follows:
THE COURT:
Mr. Peralta, I had you removed from the Court because you weren't listening to anything I said and you were talking out loud which you can't do. You can talk as much as you want to talk to your attorney as long as it's done at a whisper and the jury can't hear you. If you want to say something to the jury you have to say it under oath from the witness stand.
MR. PERALTA:

*973 Yes, sir.
THE COURT:
Not speaking out loud from where you are. If you do that and you refuse to listen to what I'm telling you, you're going to be removed again.
MR. PERALTA:
Yes, sir.
THE COURT:
You understand that. Now, I understood I've been having people speak to you in the jail about whether or not you could behave yourself here in Court.
MR. PERALTA:
Yes, sir.
THE COURT:
And they told me that you wanted to tell me something. Go ahead. Now's your chance.
MR. PERALTA:
Yes, sir. I want to apologize for my conduct earlier, at first. I've been trying to get a copyfirst of all I plead [sic] not guilty by reason of insanity.
THE COURT:
No, you didn't.
Mr. PERALTA:
She said that they have it, butI'd like to get the minutes for that. Because I did plead not guilty by reason of insanity.
After discussing other matters, the Defendant returned to the subject of his plea at arraignment. He maintained he had pled not guilty and not guilty by reason of insanity, but the judge stated that the minutes of his arraignment did not so indicate. After continuing to express his belief that he had entered such a plea, the Defendant said he did not want to take part in the trial as follows:
MR. PERALTA:
Your Honor, I'm not going to play a part in this trial. I won't, you knowI don't want to cause no trouble. But, I won't play a part in this trial.
THE COURT:
Okay. That's your right. You do what you want to do.
MR. PERALTA:
Yes, sir.
THE COURT:
But, let me warn you. I'm going to bring you back here and let you sit, but you cannot speak out loud. You cannot make comments that are audible.
MR. PERALTA:
I don't want to be in here, Your Honor. I don't want to be present. I don't want to be represented by this woman.
THE COURT:
Okay. Are you telling me if you come back you're going to do the same thing you did before?
MR. PERALTA:
Yes, sir.
THE COURT:
All right. Okay.
MS. GUSTE [defense attorney]:
Your Honor, for the record, I would like Mr. Peralta to be here, to assist me in his defense. I can only work with what he's told me. If he were here, he could hear what's going on. I'm going to advise him that it's against his best interest that he go back to the prison and not sit here, like a man, and help me defend him.
THE COURT:
Okay. I'll note your objection for the record. Mr. Peralta is telling me he's going to do the same thing he did before.
Mr. Peralta, I'm going to let you stay over at the jail. I'm going to have deputies consult with you on a periodic basis. If you can tell me that you can sit there, like you're supposed to, without *974 causing any kind of disturbance to the Court, I'll let you do it.
The Defendant then asked for a continuance because he said that he just received notice of the dates of the alleged offenses and needed time to obtain alibi witnesses. The trial judge responded he would issue instanta subpoenas for all of the witnesses that the Defendant wanted to call. Thereafter, the discussion returned to the Defendant's behavior:
THE COURT:
Okay. Now, Mr. Peralta, I want to make sure that I understand you. You're telling me you don't want to come back to this courtroom and that you're going to act out if you come back.
MS. GUSTE:
Your Honor, if you'll give my investigator just a couple of minutes to talk to Mr. Peralta.
THE COURT:
Sure. I'll do that. But, I'm only acting on what he's telling me.
MS. GUSTE:
I understand, Your Honor.
THE COURT:
Okay. Mr. Peralta, if you decide that you can behave yourself in the courtroom, I'll let you sit here. If you maintain what you've been maintaining all along, that you cannot do that, then you'll be over at the jail.
After a court recess, the trial judge again attempted to ascertain the Defendant's wishes:
THE COURT:
... Let me ask you, Mr. Peralta, have you had a chance to think about what you want to do? Do you want to remain in the courtroom or don't you?
MR. PERALTA:
I don't want to remain in here, Your Honor.
THE COURT:
Okay. And if I let you remain in the courtroom you're telling me you're going to do the same thing you did before?
MR. PERALTA:
I really don't want to, but if I have to I will, Your Honor. I really don't want to cause no problems, but I don't want to be in here.
THE COURT:
So that's what I'm asking you. If I let you stay in here, you're telling me you're going to do the same thing again?
MR. PERALTA:
Yes, sir.
THE COURT:
Okay. You can take him back.
THE JAILER:
You'll need him brought back, Judge?
THE COURT:
No, but I'd like you to check with him periodically to see if he's changed his mind.
MS. GUSTE:
Your Honor, for the record, I've asked my client to stay in court so that he could assist me with his defense. I've asked him several times and he's been uncooperative.
THE COURT:
I know it's been discussed whether or not shackling him and taping his mouth would cause anywould be the appropriate way to go and I feel that it's not. I think that would be a lot more detrimental to his best interest that just simply having him removed from the courtroom. But, I'll note your objection for the record.
The trial judge then asked the jail officer to allow the Defendant to remain in his civilian clothing in the event that the Defendant changed his mind, to which Defendant responded, "I'm not coming back." The record reflects that the Defendant left *975 the court at 1:45 p.m. that day and did not return. After the jury was sent home at the end of the day, the trial court stated for the record that the deputies had consulted with the Defendant periodically throughout the day, but that the Defendant had not changed his mind about returning.
The next day, the Defendant told the trial court that he had decided to remain in court, and he was present without incident the whole day while the State resumed the presentation of its case. The record further reflects that the defense declined to present any witnesses. Finally, the record reflects that one of the jail deputies testified out of the jury's presence that the Defendant told him before trial that he would "cause a disturbance" if he was going to trial. Further, the jail deputy stated that he checked with the Defendant every thirty minutes until 4:00 p.m. to ensure that the Defendant had not changed his mind. Each time, the Defendant stated that he did not wish to return. During this examination, Defendant stated that he had wanted no part of the trial "because [he] wasn't satisfied with [his] counselor."
On appeal, the Defendant complains that his Sixth Amendment right of confrontation has been abridged because he was absent for such a substantial portion of his trial. The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." The Fourteenth Amendment makes the guarantee of confrontation and cross-examination obligatory upon the States. Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of the trial. Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). The same right is embodied in Article 1, Section 16 of the Louisiana Constitution of 1974. See State v. Shank, 448 So.2d 654, 657 (La.1984).
La.C.Cr.P. art. 831 provides, in pertinent part, for a defendant's presence at trial when the prosecution is for a felony:
A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
. . . .
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced[.]
However, exceptions to this rule are provided in La.C.Cr.P. art. 832:
A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
(1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial; or
(2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.

*976 . . . .
The right of confrontation is not absolute, as recognized by Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In that case, the United States Supreme Court held that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Id., 397 U.S. at 343, 90 S.Ct. at 1060-1061.
In Allen, the defendant was removed during voir dire after he argued with the judge in an abusive and disrespectful manner, continued talking after the judge ordered defense counsel to take over voir dire examination, and told the judge "when I go out for lunchtime you're [the judge] going to be a corpse here." Defendant then tore up a file and threw the papers on the floor. The judge warned defendant that he would be removed from the courtroom with another outburst. Defendant continued to talk back to the judge, telling him that "there's not going to be no trial, either. I'm going to sit here and you're going to talk and you can bring your shackles out and straight jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial." The defendant was then removed from the courtroom. Id., 397 U.S. at 341, 90 S.Ct. at 1059.
After the noon recess, the defendant was permitted to return to the courtroom, but resumed his prior behavior. He complained about his appointed attorney and the fairness of the trial, but said that he wanted to stay in court during the trial. The judge told him that he could remain if he behaved. However, when the defendant's attorney moved to sequester the witnesses, he protested and reiterated that "there is going to be no proceeding. I'm going to start talking and keep talking all through the trial. There's not going to be no trial like this. I want my sister and my friends here in court to testify for me." Id. The judge again ordered the defendant to be removed from the courtroom.
The defendant was out of the courtroom during the presentation of the state's case, but was returned several times for identification purposes. During one of these occasions, the defendant answered the judge's questions with "vile and abusive language." Id. After the State's case, however, the Defendant promised to behave, and was present throughout the remainder of trial. Id., 397 U.S. at 341, 90 S.Ct. at 1060.
In concluding that the trial judge had acted within his discretion in removing the defendant from the trial, the Supreme Court recognized that trial judges "must be given sufficient discretion" to deal with disruptive defendants, and "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." The Supreme Court also observed that there were at least three "constitutionally permissible ways for a trial judge to handle an obstreperous defendant like the Defendant: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." Id., 397 U.S. at 343-344, 90 S.Ct. at 1061.
The Louisiana Supreme Court has also upheld the trial court's exercise of discretion in removing a disruptive defendant from trial.[5] In State v. Frezal, 278 So.2d 64 *977 (La.1973), the defendant expressly stated that he wished to leave the courtroom during the testimony of a particular witness. Because the defendant was "extremely abusive of counsel, the Court, and the witness, threatening the order of the Court," the trial judge permitted the defendant to leave the courtroom. Id. at 74. On appeal, defendant claimed that he was entitled to a new trial because of his absence. The Frezal court rejected this position, reasoning that "defendant had, by his boisterous conduct, forfeited his right to be present at trial." Id.
The United States Supreme Court did not relish holding that the defendant in Allen was properly removed from the courtroom. However, the Court recognized that the alternative of having a defendant undermine the judicial system with unruly behavior was unacceptable, stating that:
[i]t would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes.
Illinois v. Allen, 397 U.S at 346, 90 S.Ct. at 1062.
In a manner similar to the above cases, the record in this case reflects that the trial judge went to great lengths to determine the Defendant's wishes. After repeated questioning by the trial court, the Defendant maintained his desire to leave the courtroom, and essentially pressured the trial court into removing him by threatening to disrupt the proceedings. The record reflects that the trial judge ensured that Defendant had not changed his mind by having a deputy at the jail check with him periodically. Based on the foregoing, we find that under the circumstances of the present case, the trial judge did not abuse his discretion in ordering the Defendant removed from the courtroom. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the Defendant argues that the trial court imposed an excessive sentence. The Defendant complains that his aggregate sentence of 370 years without benefit of parole, probation or suspension of sentence is excessive. Specifically, he asserts that, because some of his convictions arise from a single course of action, he should have received concurrent sentences for those offenses as provided by La.C.Cr.P. art. 883.
The State responds that the Defendant is precluded from complaining about the consecutive nature of his sentences, since he failed to file a motion to reconsider. Additionally, the State contends that the Defendant's sentences are not excessive.
Following our review for any errors patent on the face of the record, discussed below, and our finding that the sentences must be vacated and the case remanded for resentencing, we find that the issues presented in this assignment of error are moot.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Several problems in the sentencing are noted, requiring that the sentences be vacated and the case remanded for resentencing.
*978 First, there is a conflict between the commitment and the sentencing transcript regarding which sentences were imposed without benefits. The commitment reflects that all of the sentences were to be served without benefit of probation, parole and suspension of sentence, while the transcript reflects that the trial judge only imposed the armed robbery sentences without benefits.
Next, the Defendant received an indeterminate sentence because it is impossible to determine from the record whether the trial judge intended for the sentences for aggravated battery to be served concurrently or consecutively to the armed robbery sentences. La. C.Cr.P. art 879 provides, in part, that "the court shall impose a determinate sentence." In State v. Sebastien, 31,750 (La.App. 2nd Cir.3/31/99), 730 So.2d 1040, 1045, writ denied, 99-1426 (La.10/29/99), 748 So.2d 1157, the court stated that "the district court ... is required to express its intent concerning concurrent or consecutive sentences in accordance with La.C.Cr.P. art. 883."
When imposing sentence, the trial judge first sentenced the Defendant on the armed robbery counts and then sentenced the Defendant on the aggravated battery counts. In doing so, he stated that the ten-year aggravated battery sentences, imposed on each of the two counts, were to be served "consecutive to each other." The trial judge did not specify whether the aggravated battery sentences were to be served consecutively or concurrently with the armed robbery sentences. La. C.Cr.P. art.883 directs that in the case of the concurrent sentences, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently. However, we find no such specified date in the sentencing transcript either. Further complicating the matter, the commitment states that all of the sentences are to served consecutively and that the Defendant is to serve a total of 370 years (50 years for 7 armed robberies = 350 + 20 consecutive years for 2 aggravated batteries). While the sentencing transcript clearly does not support this interpretation of the imposed sentence, it is unclear from the transcript exactly what the trial judge intended in imposing sentence. Thus, we find that the Defendant's sentences are indeterminate and, as such, they must be vacated and the case remanded to the trial court for resentencing.
While we readily note the apparent futility in this ruling, because this Defendant will serve the remainder of his natural life in prison, whether defendant's sentence is considered as 370 years of imprisonment, 350 of which are without benefits (all the sentences served consecutively) or 200 years without benefits (consecutive sentences for the four separate armed robberies and concurrent sentences on the remaining related counts) it is a matter of law that the Defendant must have a determinate sentence.[6]
Accordingly, for the reasons stated above, we affirm the Defendant's seven convictions for armed robbery and two convictions for aggravated battery, vacate the imposed sentences and remand the case to the trial court for resentencing in accordance with law.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED.
NOTES
[1] As will be discussed infra, this sentence, stated in the commitment order, does not coincide with the sentence as stated in the transcript of the sentencing proceedings.
[2] Before the case was submitted to the jury, the State, with the defense's consent, renumbered the counts in the bill of information so that the jury would not be aware that there had been other charges against the Defendant. Hereinafter, the counts will be referred to as re-numbered and presented to the jury.
[3] It is noted that the Defendant was not present in court during the testimony of these witnesses. However, these witnesses testified that they saw the Defendant leave the courtroom before their testimony and recognized him as the robber. Defendant's absence from trial on this day is the subject of assignment of error number one.
[4] The original count nine, which was declared nolle prosequi, charged defendant with armed robbery of Bruce Applegarth.
[5] See also State v. Lee, 395 So.2d 700, 701-702 (La.1981), in which the Supreme Court found no abuse of the trial judge's discretion in removing a defendant who persistently interrupted the trial by reciting scripture and singing the Star Spangled Banner. After numerous warnings by the trial judge, the defendant was removed to an adjoining room where he could hear the trial proceedings. After continued outbursts and interruptions from the next room, the defendant was bound and gagged.
[6] We also note that under La.C.Cr.P. art. 883, if the trial court chooses to deviate from the recommendations therein, it must expressly state on the record its reasons for doing so. State v. Williams, 445 So.2d 1171 (La.1984).