968 So.2d 1082 (2007)
STATE of Louisiana
v.
Irvin HAWKINS.
No. 06-KA-739.
Court of Appeal of Louisiana, Fifth Circuit.
September 25, 2007.
*1084 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, James W. Adair, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and GREG G. GUIDRY.
THOMAS F. DALEY, Judge.
The defendant has appealed his convictions and sentences for forcible rape and aggravated crime against nature. For the reasons that follow, we affirm.
FACTS:
At trial, LL[1], the victim, testified that on September 8, 1997 she was sexually assaulted by her uncle, the defendant herein. LL was 18 years old at the time of the assault. She explained that at the time she was living with her grandmother and the defendant stayed at that residence on occasion. LL described the events of that night as follows: She was halfway asleep, when she heard her bedroom door close. She rolled over in bed to see the defendant standing behind her next to the wall. She asked the defendant, "What are you doing in here?" In response, the defendant *1085 grabbed her by her shoulders and pulled her off her bed onto the floor. When she was on her stomach, face down on the floor, the defendant sat on her. LL testified that while she was in this position, the defendant put something in her mouth "like a towel or something, wrapping it around [her] mouth," so she could not speak. While she could not identify the object the defendant tried to put in her mouth, the victim testified that the tied socks, later found in her room by the police, did not belong to her and were not in her room before the assault. The defendant tried to tie her hands behind her back as he took off her underwear and shorts. When she tried to get up, the defendant told her, "[i]f you don't stop or stay still, I'm going to stick it in." LL explained that she continued to fight and to try to get away from the defendant, as they tussled around the floor. When she was able to get the binding off her mouth, she began to yell and scream and tell him to stop. In response, the defendant put his hands over her mouth and then around her throat, as he "proceeded to squeeze [her] throat so [she] would stop screaming." She stopped screaming and yelling, when he strangled her. Then, the defendant moved her to the foot of her bed where he held her hands down and her legs open. While on top of her, he licked her vagina, as he said, "Oh, L." She started crying, screaming, and telling him to stop again. In response, the defendant again put his hands around her throat to stop her from screaming by choking her. Then, the defendant started to lick her vaginal area again and "feel[] on [her] breasts." She continued to fight the defendant, hitting him with objects within her reach, including a radio speaker and a Sega Genesis game. She testified that at one point she unsuccessfully tried to wrap an electrical cord around his neck. LL testified that at this point, the defendant masturbated, "playing with his penis with one hand," as he sat on top of her. After the defendant achieved an erection, he rubbed his penis against her vaginal area. She testified she felt the defendant gliding his penis through her vaginal area and "it felt like he was trying to put [his penis] inside of me." She agreed that the defendant had gone underneath or slightly inside her vagina. LL explained that she put her hand "down there" because she did not want the defendant to "put [his penis] in." LL testified that she began to pray and then the defendant got up, wiped her off with her own shirt, and then he went to the bathroom.
LL testified that no one else was at the residence at the time of the attack. After defendant went into the bathroom, she called her mother on the telephone and told her, "Uncle Mack just raped me" referring to the defendant. LL testified that she called her boyfriend's mother who told her that they were on their way. LL testified at this point, the defendant called her name, and said, "It tastes good" and "You feel good." At that point, LL turned on the lights, put on the same shorts that she wore before she was assaulted, and proceeded to the front door. When she made it to the front door, the defendant pulled her away to prevent her from opening the door. She ran to the garage to try to get out of the house through the garage door. As she pulled on the metal rod that kept the garage door down, the defendant grabbed her from behind. She tried to hold onto the metal rod in the garage door, but the defendant was pulling her away, as he said, "What's wrong with you? What are you doing?" LL testified that she was able to escape and run to the front door again. She opened the front door and the gate, and then ran outside.
LL testified that she was running toward her boyfriend's house, when she collapsed *1086 on the next street. Her boyfriend and his parents saw her, picked her up, and brought her to her boyfriend's house where her mother was waiting and police were called. She was given another pair of shorts to wear. The victim testified that she sustained bruises around her neck and to her legs, and cuts to both the inside and the outside of her mouth and her legs from fighting the defendant. She was taken to the hospital where a sexual assault examination was performed, and she was given medication. After the examination, she spoke to Sergeant Monie and gave him a taped statement.
Sergeant Darren Monie, of the Jefferson Parish Sheriff's Office, testified that on the date of the offense he was assigned to the Sex Crimes Unit. He was called to investigate an aggravated rape complaint. When he arrived at the residence, LL identified the defendant, her 41 year-old uncle, as the person who sexually assaulted her. He described LL as calm and withdrawn, which he opined in his experience was typical for a victim of sexual assault. Sergeant Monie observed minor cuts to the victim's lips and inside of her upper and lower gums, as well as scratches or lacerations to her neck and scratches on her left knee. The victim also complained that she had neck pains. Sergeant Monie testified that the victim's reported injuries were consistent with her report of the rape. He collected the shirt worn by the victim during the assault and the blue shorts that she wore after the assault.
After interviewing the victim, Sergeant Monie relocated the investigation to the victim's residence. After receiving a consent to search the home, the police entered the home and immediately found the defendant who was placed under arrest. Sergeant Monie testified that he did not see any scratches or bruises on the defendant. Among the articles of clothing worn by the defendant, there was a purple T-shirt that was taken into evidence. Sergeant Monie also collected one Affinity diamond quartz wristwatch with a broken band, photographs of the interior and exterior of the residence, and one pair of purple socks tied at the toes found under LL's bed. According to Sergeant Monie, the knotted area on the purple socks was still moist. He opined that, consistent with the victim's account of the sexual assault, the moistness was caused by the victim's saliva when the knotted socks were used to gag her. Photographs were taken of items the victim used to defend herself, namely a boom box and its speaker, and a Sega Genesis Playstation. These items were all found on the floor of the victim's bedroom. Photographs were also taken of the panties worn by the victim at the time of the assault that were found on her bed, her watch found on the television, and the garage door.
Sergeant Monie obtained an audiotaped statement from the victim after her sexual assault examination. He also collected a pair of yellow shorts worn by the victim to her sexual assault examination. Sergeant Monie attempted to interview the defendant, but the defendant refused to sign the arrestee rights form or give a statement.
Dr. Steven Cohen, an expert in obstetrics and gynecology, testified that he performed the sexual assault examination on LL, on September 9, 1997. Dr. Cohen explained that he wrote a report stating that the victim reported that she was "[a]sleep in bed. Husband put mouth on vagina. Licked breast. Tried to strangle her several times." Dr. Cohen observed and noted that the victim was moderately upset, her neck and mouth were swollen and slightly reddened, and she had a small scratch to her left knee. Dr. Cohen testified that there was no evidence of trauma during the pelvic examination. He explained *1087 that in rape cases there was often a lack of physical evidence to the vagina even when there is penetration because the amount of trauma is dependent on the victim's prior sexual experience. Dr. Cohen agreed that the wetness or moistness of the vagina could also affect whether there were any physical signs of abrasion or forced penetration. On his report, he circled "No," in response to questions regarding the penetration of the victim's vulva, mouth, and anus. He testified that there was no sperm or semen found in fluid taken from the victim's cervix and vagina, which he opined was also common. However, Dr. Cohen agreed that the perpetrator's "wiping off' the victim after a slight penetration could affect the presence of semen in the victim's vagina.
The State and the defense entered into a stipulation concerning a portion of a report written by Julie Golden, an expert in the field of forensic science. That portion of the report concerned a cutting taken from "the new River Blue shorts" worn by the victim. The stipulation was read into the record. It stated,
`DNA test results from the sperm cell fraction of the cutting from the shorts, New River brand, are consistent with a mixture of the reference blood stain sample of the suspect, Irvin Hawkins, and at least one other unknown DNA donor. Therefore, Irvin Hawkins is not excluded as a sperm cell donor in Relia-Gene Sample 999904.'
And a supplement conclusion is that, '99.5 percent of the population is excluded as a possible donor to the genetic profile generated from the cutting of shorts, New River brand.'
At the conclusion of trial, the defendant was found guilty as charged to forcible rape and aggravated crime against nature. The defendant's Motion for New Trial was denied. He received consecutive sentences of 40 years imprisonment for the rape conviction and 15 years imprisonment for the crime against nature conviction. This appeal followed.
ASSIGNMENT OF ERROR NUMBER ONE
In his first Assignment of Error, the defendant argues the State failed to prove the essential element of vaginal sexual intercourse, i.e. penile penetration; therefore, the evidence was insufficient to support his conviction for forcible rape. He contends that the State provided no evidence of penetration, including the testimonies of the victim and her examining physician. The defendant notes that no sperm or hairs were found on the victim. Also, the tested DNA evidence neither identified nor excluded him.
The State argues that it proved penetration through the testimony of the victim. According to the State, the victim testified that the defendant rubbed his penis into her vagina and she placed her hands over her vaginal area to try to prevent the defendant from penetrating her only after she felt his penis enter her vagina.
The constitutional standard of review used by an appellate court to determine the sufficiency of the evidence to support a criminal conviction, is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier-of-fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is not the function of the appellate court to re-evaluate the credibility of witnesses, reweigh the evidence, or to overturn the factual determination of guilt. State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, writ denied, 01-1849 (La.5/24/02), 816 *1088 So.2d 297. An appellate court should not second-guess the credibility determinations of the trier-of-fact beyond making sufficiency evaluations under the Jackson standard of review. Id. In the absence of internal contradiction or irreconcilable conflicts with the physical evidence, one witness's testimony, if believed by the trier-of-fact, is sufficient to support a conviction. Id.
Rape is defined in part as the act of vaginal sexual intercourse with a person without the person's lawful consent. LSA-R.S. 14:41(A). "Forcible rape is rape committed when the . . . sexual intercourse is deemed to be without the lawful consent of the victim because . . . the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." LSA-R.S. 14:42.1(A)(1). Any sexual penetration, however slight, is sufficient to complete the crime, and emission is not necessary. LSA-R.S. 14:41(B). Therefore, the elements of forcible rape are vaginal sexual intercourse regardless of degree of penetration, without the consent of the victim, when the victim was prevented from resisting by force or threat of physical violence, and when the victim reasonably believed that resistance would not prevent the rape. State v. Wallace, 788 So.2d at 584. See also, State v. Carter, 888 So.2d at 933. The testimony of the victim can be sufficient to establish sexual penetration, even though there is an absence of scientific evidence of sexual intercourse. State v. Wallace, 788 So.2d at 584.
In State v. Wallace, supra, this Court found that the evidence was sufficient to support a conviction for forcible rape in the absence of physical evidence, i.e. no seminal fluid, tears, or abrasions. In that case, the victim identified the defendant as the perpetrator, and an examining physician explained the reasons for the lack of physical evidence.
In State v. Hubbard, 97-916 (La.App. 5 Cir. 1/27/98), 708 So.2d 1099, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415, the defendant argued that there was insufficient evidence to prove that he vaginally penetrated the victim. State v. Hubbard, 708 So.2d at 1103. The victim testified that the defendant held a knife to her head during the entire encounter, and "had sex" with her. After the defendant vaginally raped her, she was able to push the defendant down and escape. State v. Hubbard, 708 So.2d at 1101. This Court found that the victim's testimony that the defendant made her have sex and her affirmative response when she was asked if the defendant raped her was sufficient to prove the defendant committed aggravated rape. State v. Hubbard, 708 So.2d at 1102.
In State v. Lewis, 577 So.2d 799, 801 (La.App. 2 Cir.1991), the victim testified that the defendant was unable to achieve an erection but did make "`slight penetration.'" The physician who examined the victim testified that there was no evidence of penetration or trauma and "gathered" that there was no penetration. Id. at 801. In affirming the defendant's conviction of aggravated rape, the Second Circuit stated that rape occurs "when there is any penetration, however slight, of the aperture of the female genitalia, even its external features." Id. at 801.
In the present case, the victim identified her uncle as the person who raped her. She described the defendant massaging his penis against her vaginal area. When asked if [the defendant] glided his penis through her vagina, the victim responded:
A Through my vaginal area, yes. When, when he was gliding his penis across my vaginal area, that's when I automatically *1089 put my hand down to prevent him from putting it in.
B Did he go underneath any part of your vagina?
A It was, it was wet, and it felt like he was trying to put it inside of me. And that's, like I said, when I put my hand to cover it, to hold, hold it so he wouldn't.
* * *
Q And did you feel it? Did you feel his penis glide through
A My vaginal area?
Q Yes.
A Yes.
Later, on cross-examination, the victim was asked if she kept the defendant from penetrating her by fighting him and putting her hands down by her vagina. The victim responded, "I put my hand over my vaginal area." She also responded affirmatively when asked if she told the police that the defendant had glided his penis over her vagina three times, as he masturbated. Then the following exchange took place:
Q And did you feel him go underneath or in your vagina in the slightest?
A Yes
In addition, Dr. Cohen testified that there was often the lack of physical evidence of trauma, i.e. abrasions, in cases of vaginal penetration, since it was dependent on the victim's prior sexual experience and the wetness or moistness of the vagina. He testified that it was also common for there to be no sperm or semen found in fluid taken from the victim's cervix and vagina. In addition, he agreed that the lack of sperm or semen found in the victim's vagina could have been caused by the perpetrator "wiping off' the victim after a slight penetration.
Finally, the DNA test results stipulated to by the defense and State indicated that the defendant was not excluded as a sperm cell donor.
The jury obviously found LL's testimony in regards to the element of penile penetration of her vagina, as well as that of Dr. Cohen's explaining the lack of physical trauma, sperm, and seminal fluid to be credible. Viewing the evidence as a whole, including the victim's affirmative response that the defendant's penis went into her vagina in the slightest, a rational trier-of-fact could find beyond a reasonable doubt that penetration occurred and a rape was committed. Thus, we find the evidence is sufficient to support the defendant's conviction of forcible rape.
ASSIGNMENT OF ERROR NUMBER TWO:
In his second Assignment of Error, the defendant contends the trial court erred in granting the State's motion to allow hearsay evidence to be testified to by the police officer. The defendant argues that the trial court erred in granting the State's motion to "proclaim the some of the victim's statements on the scene as admissible" under the hearsay excited utterance exception. He claims that the police officer who testified, Sergeant Monie, was allowed to testify about nearly everything the victim told him, as an excited utterance. The defendant contends that the victim's statements were neither reactionary nor spontaneous due to the duration of time, and that the victim's actions were not reflective.
The State argues that the defendant is precluded from raising this claim regarding the admission of hearsay testimony, on appeal, because he failed to contemporaneously object, at trial.
In the present case, as the State notes, the record reveals that the defendant did not make an objection throughout the entirety of Sergeant Monie's trial testimony, *1090 and therefore the trial court did not rule on a defense hearsay objection. Instead, the defendant raises this claim for the first time on appeal that the trial court erred in allowing hearsay testimony on the record.
In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. LSA-C.Cr.P. art. 841. State v. Gaal, 01-376, p. 11 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied by, 02-2335 (La.10/3/03), 855 So.2d 294. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. Id. This prevents the defendant from gambling for a favorable verdict at trial, and then later utilizing appellate review to correct errors that might easily have been corrected by the trial judge. State v. Berkeley, 00-1900, p. 6 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, 653, writ denied by, 01-1659 (La.4/26/02), 814 So.2d 549.
Since, the defendant did not raise a contemporaneous objection to the alleged hearsay testimony, there is no ruling for this Court to review. State v. Davis, 06-402, p. 10 (La.App. 5 Cir. 11/28/06), 947 So.2d 48, 58.
We note however, that prior to trial, the state filed a motion to declare certain victim statements admissible under the excited utterance hearsay exception. A hearing was held in which Sergeant Monie testified as to the victims statements on the night of the assault. The trial court granted the state's motion, finding that the statements were made to the officer by the victim within one hour and fifty minutes after the assault. Looking at the incident in its full context, the court found that someone who was the victim of this type of incident would still be "in an extremely upset and excited state." The defendant did not seek appellate review of that ruling. Additionally, all the information brought out in Sergeant Monie's testimony was also brought out in the testimony of the victim. Therefore, if the trial court did err in admitting this testimony, we find it to be harmless error because the jury heard the same testimony from the victim.
ASSIGNMENT OF ERROR NUMBER THREE
Next, the defendant argues that the trial court erred in denying his request for a mistrial, because of his "outburst" in front of the jury and his removal from the courtroom for the remainder of his trial. He claims that his mental health issues, which affected his competency in the past, caused him to have the outburst on the third day of trial, necessitating his removal from the courtroom and his absence from the remainder of his trial. He contends that an admonition given by the trial judge was ineffectual.
The State argues that the trial court did not err in denying the defense motion for a mistrial. The State claims that because the defendant made the comments, the trial judge's decision on whether to grant a mistrial in order to assure the defendant a fair trial was discretionary pursuant to LSA-C.Cr.P. art. 771. The State suggests that the defendant's outburst, after he aided his counsel in the selection of a jury and the trying of his case, was manipulative and designed to require the court to grant a mistrial.
A mistrial is a drastic remedy. It should only be granted where the defendant suffers such substantial prejudice *1091 that he has been deprived of any reasonable expectation of a fair trial. State v. Rodriguez, 02-334, p. 20 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 128, writ denied, 03-482 (La.5/30/03), 845 So.2d 1061. When an irrelevant or immaterial remark made, during trial or in argument by a person other than the judge, the district attorney, or a court official, is of such a nature that it might create prejudice against the defendant or the State in the mind of the jury, the trial judge should promptly admonish the jury to disregard the remark. LSA-C.Cr.P. art. 771.
The Confrontation Clause of the Sixth Amendment of the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." An accused's right to be present in the courtroom at every stage of the trial is one of the most basic of the rights guaranteed by the Confrontation Clause. State v. Peralta, 01-149 (La.App. 5 Cir. 1/15/02), 807 So.2d 967, 975, writ denied, 02-0541 (La.1/24/03), 836 So.2d 41, citing Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). This same right is embodied in Article 1, Section 16 of the Louisiana Constitution of 1974. State v. Peralta, 807 So.2d at 975, citing State v. Shank, 448 So.2d 654, 657 (La.1984). However, the right of confrontation is not absolute. State v. Peralta, 807 So.2d at 976, citing Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).
In the present case, the first crucial question is whether a defendant can assert reversible error because he was not present during the entire trial, after he requested to be removed.
LSA-C.Cr.P. art. 831(5) and (6) provide, in pertinent part, that "[e]xcept as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present . . . [i]n trials by jury, at all proceedings when the jury is present, and . . . [a]t the rendition of the verdict or judgment, unless he voluntarily absents himself. However, LSA-C.Cr.P. art. 832(A)(1) provides:
A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and . . . [the defendant] voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial.
Therefore, pursuant to LSA-C.Cr.P. art. 832 a defendant charged with a felony cannot object to his temporary voluntary absence from the proceedings if his counsel was present. State v. Tart, 93-772 (La.2/9/96), 672 So.2d 116, 135.
See by analogy, State v. Behn, 445 So.2d 516 (La.App. 3 Cir.1984), in which the defendant alleged that the trial court erred in continuing with the proceedings while he was absent. It was discovered that the defendant had escaped after closing arguments and after the prosecutor and the defense counsel met in chambers to review the proposed jury charge. The trial judge continued proceedings despite defense objection, but acceded to defense counsel's request to admonish the jury to disregard the defendant's absence. Subsequently, the trial court charged the jury, and after its deliberation, the jury found the defendant guilty in his absence. State v. Behn, 445 So.2d at 518-519. The appellate court found that pursuant to LSA-C.Cr.P. art. 831(6), the defendant need not be present at the rendition of the verdict if he voluntarily absents himself, as the defendant *1092 admitted in his brief. Therefore, the verdict rendered in the defendant's absence was not improper. In addition, the court found that the defendant's voluntary removal of himself during the final phase of the proceedings was temporary and fell within the ambit of LSA-C.Cr.P. art. 832. The appellate court noted that defense counsel was present at all proceedings in which the defendant chose to absent himself. Therefore, pursuant to LSA-C.Cr.P. art. 832, the defendant who was charged with a felony, not punishable by death, could not object to his temporary voluntary absence at the proceedings listed in LSA-C.Cr.P. art. 831, since his counsel was present. The appellate court also found that the charging of the jury was not adversarial proceeding and, therefore, did not require any input by the defendant. It also noted that the evidence presented was clear and overwhelming, therefore the defendant's further presence could hardly have altered the outcome of the trial. State v. Behn, 445 So.2d at 519.
In the present case, the State and the defense rested their respective cases and agreed to the jury charges and verdict form, on the second day of trial. At the beginning of the third day of trial, the defendant expressed displeasure with the performance of his attorney, in front of the jury. After the jury was removed, the trial judge asked the defendant what was wrong. The defendant only responded that he wanted to be taken back to jail. When the trial judge inquired again, the defendant expressed more dissatisfaction with his attorney and informed the court that he had fired his attorney. When the trial judge asked the defendant what he want to see happen that day, the defendant asked again to be taken back to jail. The trial judge then asked the defendant for clarification of his statement concerning his desire not to be present for the rest of his trial. But, the defendant refused to respond. The trial judge then concluded that the defendant did not want to be present, since he had asked to be removed. When the trial judge expressed his intention to finish the trial without the defendant, defense counsel requested a mistrial based in part on the defendant's absence, which the trial court denied. When the jury returned, the trial court informed the jury that the defendant had chosen not to be present.
In the instant case, like the defendant in State v. Behn, the defendant chose to be voluntarily absent for the remainder of his trial, while his counsel was present. In addition, like the defendant in State v. Behn, the defendant, in the present case, was only absent for the charging of the jury, which is not adversarial proceeding requiring his input. The verdict in the instant case is based on clear and overwhelming evidence. Thus, we find no error in the trial court's proceeding with the conclusion of the trial after the defendant was escorted back to jail at his own request.
The second crucial question is whether a defendant can assert reversible error because he did not receive a fair trial, when his claim is based on the possible prejudicial impact of his own speech and conduct before the jury.
LSA-C.Cr.P. art. 832(A)(2) provides exceptions when:
A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and . . . [a]fter being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists *1093 in conduct which justifies his exclusion from the courtroom.
In Illinois v. Allen, supra, the defendant was removed during trial after he argued with the judge in an abusive and disrespectful manner. The United States Supreme Court held:
`No doubt the privilege (of personally confronting witnesses) may be lost by consent or at times even by misconduct.' Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.
Illinois v. Allen, 397 U.S. at 342-343, 90 S.Ct. at 1060-1061. (Citation and footnotes omitted.).
A defendant is not entitled to a new trial because his first trial was tainted with prejudice caused by his own conduct. State v. Shank, 448 So.2d at 658.
In the present case, on the third day of trial, the defendant expressed displeasure with the performance of his attorney, in front of the jury. The trial judge asked the defendant to sit down three times and to wait before speaking seven times before the jury was removed, but the defendant did not comply. The following took place in front of the jury.
MR. HAWKINS:
I don't want this man to be my attorney any longer. And I've been locked up for seven years and 11 months.
THE COURT:
All right. Mr. Hawkins, sit down.
MR. HAWKINS:
And I don't want nobody telling me to shut up.
THE COURT:
Okay. Just sit down.
MR. HAWKINS:
Ain't nobody telling me to shut up.
THE COURT:
Mr. Hawkins, sit down.
MR. HAWKINS:
I ain't takin this no more.
THE COURT:
Take him out of here.
MR. HAWKINS:
Get your hands off of me.
THE COURT:
Take the jury out. Wait a second.
MR. HAWKINS:
Nobody telling me what to do any more.
THE COURT:
Wait one second. Just wait here. Wait one second.
MR. HAWKINS:
Tell them the truth and stop lying.
THE COURT:
Okay. Mr. Hawkins, wait one minute. Wait one minute.
MR. HAWKINS:
Stop lying.
THE COURT:
Wait one second.
(Whereupon, the jury was escorted out of the courtroom.)
THE COURT:
Wait one second. . . .
*1094 Later, when the defendant was asked by the prosecutor if he could calmly go downstairs, the defendant refused to respond. Subsequently, the trial judge responded when asked by defense counsel, if the jury would see him taken back to jail, that it was beyond that because the defendant had told the jury the entire history of his incarceration. The trial judge commented that she had tried to protect the defendant, but that he had chosen to expose to his history. When the trial judge expressed her intention to finish the trial without the defendant, defense counsel requested a mistrial based in part on the defendant's outburst, which the trial court denied. The trial judge noted that the defendant had been found competent to stand trial, and had been quiet and had assisted his counsel during the first two days of his trial. But, that the defendant had now chosen to behave in a certain manner, and she could not control the effect it would have on the jury. When the jury returned, the trial court instructed them to disregard the defendant's behavior and comments.
In State v. Peralta, supra, this Court found that the trial judge did not abuse his discretion in ordering the defendant removed from the courtroom, after he maintained his desire to leave the courtroom and pressured the trial court into removing him by threatening to disrupt the proceedings. State v. Peralta, 807 So.2d at 971-977.
In State v. Addison, 03-1421 (La.App. 5 Cir. 3/30/04), 871 So.2d 536, 547-548, writ denied, 04-1291 (La.10/29/04), 885 So.2d 584, this Court found that the trial court did not abuse its discretion in removing the defendant from the courtroom after he disrupted the proceedings. The defendant argued with the trial judge, used profanity in the courtroom, and failed to stand up numerous times after being instructed by the trial judge. The trial judge informed the defendant that he would be allowed to be present at the proceedings as long as he properly conducted himself. The next day, the defense counsel reported to the trial court that the defendant was being verbally abusive and had threatened her, and that she was afraid that something might happen. State v. Addison, 871 So.2d at 547-548.
In the present case, the trial judge stated that defendant was quiet and assisted defense counsel throughout the first two days of trial. On the third day, after the State and defense counsel both rested after presentation of all the evidence, the defendant chose to have an outburst in front of the jury. During that outburst, the defendant informed the jury among other things that he had been incarcerated for seven years and 11 months. The trial judge instructed the defendant to stop talking and sit down several times, but the defendant chose to continue. Subsequently, after denying the defense motion for a mistrial, the trial judge admonished the jury. The trial judge stated, "I need to instruct you, please disregard the behavior of the defendant and the comments that he made. We're going to continue with the trial. [The defendant's] chosen not to be here. Thank you."
The record reflects that the trial court made every attempt to quiet the defendant until the jury could be removed. However, like the defendants in Peralta and Addison, the defendant in this case continued the behavior in front of the jury after being warned to stop. The defendant initially asked to be taken back to jail. Then, when asked by the trial judge what he wanted to happen, the defendant again asked to be taken back to jail. The defendant refused to respond to any further inquiries by the court, and was removed as per his request. The record indicates that *1095 the defendant's behavior would have prevented his trial from proceeding with him in the courtroom. The defendant is not entitled to a new trial because of prejudice caused by his own conduct. State v. Shank, supra. Therefore, we see no abuse of discretion by the trial court in removing the defendant from the courtroom, continuing the trial in the defendant's absence, and denying defendant's Motion for Mistrial.
ASSIGNMENT OF ERROR NUMBER FOUR
In his final Assignment of Error, the defendant argues that his overall sentence is excessive, because he is required to serve consecutively his sentence on each count, even though both crimes were committed in the same attack. He notes that the trial judge failed to give any justification for the imposition of consecutive sentences. The defendant also claims that he should not have received the maximum sentence on both counts, because he is not the most egregious of offenders and he has mental health issues that limited his responsibility.
The State argues the trial judge did not abuse her discretion in sentencing the defendant. The State claims that the sentences imposed on the defendant for his convictions for forcible rape and aggravated crime against nature are within the statutory guidelines. The State contends that the sentences imposed were not constitutionally excessive considering the harm caused to society by the defendant, a sexual predator of children.
In the present case, the defendant did not raise the issues of consecutive sentences or the trial judge's failure to comply with LSA-C.Cr.P. art. 894.1 in the trial court. Since the defendant failed to raise these issues in the trial court or in a Motion to Reconsider Sentence, he is precluded from raising these issues on appeal. State v. Wickem, 99-1261, pp. 6-7 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 967-968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839; State v. Vollm, 04-837 (La.App. 3 Cir. 11/10/04), 887 So.2d 664, 668. The defendant's failure to file a Motion to Reconsider Sentence limits review of his sentence to an examination only for constitutional excessiveness. State v. Crawford, 05-494, p. 4 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Crawford, supra. A sentence that is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering is unconstitutionally excessive, even if it within the statutory limits. State v. Riche, p. 2, 608 So.2d 639, 640 (La.App. 5 Cir. 10/27/92), writ denied, 613 So.2d 972 (La.1993). A trial court is afforded great discretion in determining sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. LSA-C.Cr.P. art. 881.4(D), State v. Adair, 04-120, pp. 3-4 (La.App. 5 Cir. 5/26/04), 875 So.2d 972, 974-975, State v. Riche, 608 So.2d at 640. In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Crawford, supra. Age is an insufficient justification for a downward departure in a sentence. State v. Hernandez, 02-892 (La. App. 5 Cir. 1/28/03), 839 So.2d 281, 285. The appellate court, on review, must keep in mind that maximum sentences should *1096 only be imposed on the most egregious offenders. State v. Taylor, 05-280, p. 9 (La.App. 5 Cir. 12/27/05), 920 So.2d 287, 296.
The three factors that are considered in reviewing a trial court's sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. State v. Crawford, 922 So.2d at 670.
The defendant, in this case, was convicted of forcible rape and aggravated crime against nature. The sentencing exposure for a conviction on forcible rape, a violation of LSA-R.S. 14:42.1, is imprisonment "at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence." The defendant was sentenced to 40 years, at hard labor, for the forcible rape conviction. The sentencing exposure for a conviction on aggravated crime against nature, a violation of LSA-R.S. 14:89.1 is imprisonment "at hard labor for not less than three nor more than fifteen years, such prison sentence to be without benefit of suspension of sentence, probation or parole." The defendant was sentenced to fifteen years, at hard labor, for the aggravated crime against nature conviction.
In State v. Riche, 608 So.2d 639 (La. App. 5 Cir. 10/27/92), writ denied, 613 So.2d 972 (La.1993), this Court upheld a forty year sentence for a defendant convicted of forcible rape. In Riche, the defendant raped the victim at knife point.
In State v. Williams, 00-981 (La.App. 5 Cir. 4/11/01), 786 So.2d 805, 813-814, writ denied, XXXX-XXXX (La.3/28/02), 812 So.2d 646, this Court upheld a maximum sentence of 40 years the defendant vaginally raped the victim twice and attempted anal intercourse. When the victim tried to escape, the defendant punched her in the face. The defendant also threatened to kill her with a knife. In addition, he caused her to be raped by a second man. State v. Williams, 786 So.2d at 813-814.
In State v. Tate, (La.App. 1 Cir.1987), 506 So.2d 546, writ denied, 511 So.2d 1152 (La.1987), this Court upheld a 15-year sentence for an aggravated crime against nature conviction. State v. Tate, 506 So.2d at 548. The defendant was a first felony offender. This Court found that the trial court did not abuse its discretion in imposing the maximum sentence, based on its demonstrated familiarity with the defendant's history and the circumstances of the crime. State v. Tate, 506 So.2d at 553-554.
In the present case, the defendant was 41-years old when he committed the crimes, and 49-years old when he was convicted for those crimes. He was found competent to stand trial for the crimes for which he was convicted. Before sentencing, the trial judge stated that he took into account the evidence presented at trial, as well as the pre-sentence investigation report, which detailed the defendant's extensive criminal history that included a sexual assault. The defendant was convicted of burglary and sentenced to 4 years. His sentence was suspended and he was given probation. His probation was revoked in 1980 due to an arrest for robbery by assault. In 1986, the defendant was convicted of two counts aggravated kidnapping and one count of aggravated sexual assault with a deadly weapon for which he received a sentence of 10 years. In 1993, the defendant was arrested for theft and possession of stolen property. In 1996, the defendant pled guilty to theft, and was sentenced to 2 years.
In addition, the trial judge could also have considered the victim's testimony, the severity of the crimes, the threats and the *1097 amount of force used to commit those crimes, i.e. strangling the victim twice and the resultant injuries inflicted on the victim. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Crawford, 922 So.2d at 671. Taking the details of the assault into account and the extensive criminal history of the defendant we see no abuse of discretion by the trial judge in the imposition of the maximum sentences for the crimes committed by the defendant.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record indicates that the trial judge failed to advise the defendant of the appropriate prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. State v. Simmons, 03-20 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249. LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. Therefore, this matter is remanded to the trial court where the trial judge is ordered to send written notice to the defendant of the appropriate prescriptive period for filing for post-conviction relief within ten days of the rendition of this Court's opinion. The trial court is further ordered to file written proof that the defendant received the notice in the record.
This review also indicates the trial judge failed to inform the defendant that he must register as a sex offender. Since the defendant was convicted of LSA-R.S. 14:89.1, which is defined as a "sex offense," LSA-R.S. 15:540 et seq, requires registration of the sex offender. The record reveals that the trial judge did not provide the defendant with written notification of the registration requirements of LSA-R.S. 15:542, as required by LSA-R.S. 15:543(A). Therefore, on remand, the trial judge is ordered to inform the defendant of the registration requirements of LSA-R.S. 15:542 by sending appropriate written notice to defendant within ten days of this opinion, and by filing written proof in the record that defendant received such notice.
CONCLUSION:
For the foregoing reasons, the defendant's convictions and sentences are affirmed. This matter is remanded to the trial court for the limited purpose of informing the defendant of the time periods for seeking post conviction relief and requirement of registration as a sex offender.
CONVICTIONS AND SENTENCES AFFIRMED; MATTER REMANDED.
NOTES
[1] In accordance with LSA-R.S. 46:1844(W)(3), the victim of this sex offense will be referred to by her initials to protect her identity. State v. Berniard, 03-484, p. 11 (La.App. 5 Cir. 10/15/03), 860 So.2d 66, 78, writ denied, 03-3210 (La.3/26/04), 871 So.2d 345.